LYMAN-RICHEY CORPORATION,
A NEBRASKA CORPORATION, APPELLANT, V. NEBRASKA
DEPARTMENT OF REVENUE ET AL., APPELLEES.

606 N.W. 2d 813

Filed March 3, 2000. No. S-98-991.

Nicholas K. Niemann, of McGrath, North, Mullin & Kratz, P.C., for appellant.

Don Stenberg, Attorney General, and L. Jay Bartel for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

This is an action involving a denial by the Nebraska Department of Revenue (the Department) of a sales and use tax refund claim against the Department; M. Berri Balka, Nebraska Tax Commissioner; and the State of Nebraska. Lyman-Richey Corporation appeals from the order of the district court for Lancaster County upholding the Department's denial of the refund claim. On our own motion, we removed the matter to this court pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals.

## BACKGROUND

Lyman-Richey is a Nebraska corporation engaged in the business of processing, transporting, distributing, and selling various

products, primarily concrete. All of the concrete manufacturing by Lyman-Richey occurs either fully or partially in concrete mixers that are attached to truck chassis. On March 29, 1990, Lyman-Richey submitted an application to the Department for a project under the Employment and Investment Growth Act (the Act), Neb. Rev. Stat. §§ 77-4101 to 77-4112 (Cum. Supp. 1988). Under the Act, if a taxpayer agrees to undertake a project that will result in a minimum investment of $3,000,000 and the creation of 30 new jobs in Nebraska, the taxpayer is eligible to receive certain tax incentives provided under the Act. §§ 77-4104(3) and 77-4105. One such incentive is a refund of all sales and use taxes paid on all purchases of "qualified property" used as a part of the project. § 77-4105(3). Lyman-Richey's application proposed a project related to the "general expansion of [Lyman-Richey's] employment base and various plant and office additions."

Lyman-Richey's application was approved, and the Department and Lyman-Richey entered into an agreement under the Act. See § 77-4104(3) and (4).

Subsequently, Lyman-Richey filed a "Claim for Overpayment of Sales and Use Tax," requesting a refund of sales or use taxes paid on concrete mixers purchased by Lyman-Richey between April and July 1992. Lyman-Richey asserted that the concrete mixers were "qualified property" under what was then § 77-4103(12), now codified at § 77-4103(13) (Supp. 1999), and that as an entity eligible to receive tax benefits under the Act, it was entitled to a refund of sales or use tax paid on its purchase of the mixers. The total amount of the claim was $19,293. Lyman-Richey explained in its claim that it had acquired the concrete mixers from a mixer manufacturer and the truck chassis from a truck manufacturer. The mixer manufacturer mounts the mixers to the trucks and then delivers the trucks and the mixers to Lyman-Richey.

The Department denied Lyman-Richey's refund claim. The Department found that the concrete mixers were not "qualified property" as was defined in § 77-4103(12). The Department determined that processing equipment is not defined to be qualified property under the Act and that while much processing equipment meets the criteria for qualified property, a determina-

tion that a machine is processing equipment does not mean that it is also qualified property. The Department also found that "[w]hether purchased separately or as one unit, the concrete mixers are, and have to be, a part of the motor vehicle when they are operating. The entire unit is required to be licensed when operated on the highways."

Lyman-Richey appealed the Department's denial to the district court for Lancaster County. The district court found that the Department had not made a finding in accordance with § 77-4103(12), which required that qualified property be "located and used at the project." The district court remanded the case to the Department to resolve the relevance of this language with regard to Lyman-Richey's concrete mixers.

On remand, the Department found that the concrete mixers were " 'located and used at the project' " in accordance with § 77-4103(12). The Department reaffirmed its original basis for denying Lyman-Richey's refund claim.

Lyman-Richey subsequently filed a new petition, appealing the Department's denial of the refund claim. The parties agreed that the only issue to be determined by the district court was whether the concrete mixers at issue, each of which was attached to a truck chassis, constituted "qualified property" under § 77-4103(12), or whether they constituted "motor vehicles" excluded from the definition of "qualified property." The district court affirmed the denial of Lyman-Richey's requested refund, concluding as follows:

> I am persuaded by the evidence before me that the mixers [Lyman-Richey] bought must be attached to the trucks to work. They are specifically designed this way. The mixers are of no use to [Lyman-Richey] without the trucks and the trucks are of no use to [Lyman-Richey] without the mixers. [Lyman-Richey] bought the trucks and the mixers to function as a unit and that is what they do. The fact that [Lyman-Richey] chose to buy them from separate manufacturers is of no consequence to this fact and has no bearing on whether what [Lyman-Richey] got from its purchases was a motor vehicle as defined by the Act.

> In essence [Lyman-Richey] asks that I define motor vehicles to exclude mobile machinery and equipment. I

cannot help but note, however, that the Act provides a specific definition of motor vehicles and I cannot rewrite that definition. If the Legislature had wanted to provide a tax break on mobile machinery and equipment such as cement mixers, it could have done so. It didn't and I can't.

Lyman-Richey appeals from the district court's decision.

## ASSIGNMENTS OF ERROR

Lyman-Richey assigns that the district court erred in concluding (1) that because a "unit" is created by the bolting together of a truck (motor vehicle) and a concrete mixer (nonmotor vehicle), the unit is to be treated as a motor vehicle; (2) that the concrete mixers were subject to licensing for operation on the highways; and (3) that mobile machinery and equipment does not qualify for the Act's sales and use tax refund.

## SCOPE OF REVIEW

■ Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Ferguson v. Union Pacific RR. Co., ante* p. 78, 601 N.W.2d 907 (1999).

## ANALYSIS

The Act provides sales and use tax benefits on "qualified property" used as part of a project approved by the State. See § 77-4105(3). "Qualified property" is defined under the Act as

any tangible property of a type subject to depreciation, amortization, or other recovery under the Internal Revenue Code of 1986, or the components of such property, that will be located and used at the project. Qualified property shall not include (a) aircraft, barges, motor vehicles, railroad rolling stock, or watercraft or (b) property that is rented by the taxpayer qualifying under the Employment and Investment Growth Act to another person.

§ 77-4103(12).

The Act defines a motor vehicle as "any motor vehicle, trailer, or semitrailer as defined in section 60-301 and subject to licens-

ing for operation on the highways." § 77-4103(8). Neb. Rev. Stat. § 60-301(16) (Cum. Supp. 1992) defines "motor vehicle" as any vehicle propelled by any power other than muscular power, except (a) mopeds, (b) farm tractors, (c) self-propelled equipment designed and used exclusively to carry and apply fertilizer, chemicals, or related products to agricultural soil and crops and other implements of husbandry designed for and used primarily for tilling the soil and harvesting crops or feeding livestock, (d) power unit hay grinders or a combination which includes a power unit and a hay grinder when operated without cargo, (e) vehicles which run only on rails or tracks, (f) off-road designed vehicles, including, but not limited to, golf carts, go-carts, riding lawnmowers, garden tractors, all-terrain vehicles as defined in section 60-2801, snowmobiles, and minibikes, and (g) road and general-purpose construction and maintenance machinery not designed or used primarily for the transportation of persons or property, including, but not limited to, ditchdigging apparatus, asphalt spreaders, bucket loaders, leveling graders, earthmoving carryalls, power shovels, earthmoving equipment, crawler tractors, and self-propelled invalid chairs.

The parties agreed the only issue in this case was whether the mixers when attached to truck chassis constituted "qualified property" under § 77-4103(12), or whether they constituted "motor vehicles" which were excluded from the definition of "qualified property." Lyman-Richey argues that a mixer is a separate, independent piece of manufacturing equipment and that it does not become a motor vehicle when attached to a truck chassis. The Department contends that when a mixer is attached to the truck chassis, it forms an integrated unit and that unit is a motor vehicle.

■ Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Ferguson v. Union Pacific RR. Co., supra.* In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not

resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Id.*

██ The parties do not dispute that a truck chassis on its own is a motor vehicle. The question we are faced with is whether a mixer, when attached to a truck chassis, is a motor vehicle excluded from the definition of "qualified property" under the Act. We answer in the affirmative. When a mixer is attached to a truck chassis, it forms an integrated unit, and that unit is a motor vehicle. The mixer is powered by the truck chassis, a motor vehicle. It cannot function and is of no use to Lyman-Richey if it is not attached to the truck chassis. Counsel for Lyman-Richey conceded at oral argument that Lyman-Richey does not use a mixer without a truck chassis; a mixer is used only symbiotically with a truck chassis. When the mixer is attached to the truck chassis, it is dependent on the truck to operate, and therefore, the mixer and the truck form an integrated unit. Lyman-Richey bought the mixers and trucks to function as a unit, and that is what they do. It makes no difference that Lyman-Richey bought the mixers and the truck chassis from different manufacturers. The fact remains that the mixers must be attached to the truck chassis in order to manufacture concrete. Therefore, a unit is created when a mixer is attached to a truck chassis, and that unit is a motor vehicle.

In order for the unit to be a motor vehicle under the Act, two requirements must be met. First, the unit must be a motor vehicle as defined in § 60-301. See § 77-4103(8). Section 60-301 defines a motor vehicle as "any vehicle propelled by any power other than muscular power." The unit created when a mixer is attached to a truck chassis falls under this definition. Second, it must be subject to licensing for operation on the highways. See § 77-4103(8). Neb. Rev. Stat. § 60-331 (Reissue 1988) provides:

> The registration fee on commercial trucks . . . shall be based upon the gross vehicle weight . . . . Gross vehicle weight shall mean the sum of the empty weights of a truck or truck-tractor and the empty weights of any trailer, semi-trailer, or combination thereof with which it is to be operated in combination at any one time, plus the weight of the maximum load to be carried thereon at any one time.

In registering the truck with the mixer attached, the registration fee is based on the weight of the truck chassis, the mixer, and the load to be carried in the mixer. Therefore, since the weight of the mixer and its load is included in determining the truck's registration fee, the whole unit is subject to licensing for operation on the highways. The unit created when the mixer is attached to the truck meets the definition of a motor vehicle under the Act.

## CONCLUSION

When a concrete mixer is attached to a truck chassis, an integrated unit is created, and that unit is a motor vehicle excluded from the definition of "qualified property" under the Act. Lyman-Richey was not entitled to a refund on sales and use taxes paid on the mixers.

AFFIRMED.

STEPHAN, J., not participating.